Teague I. Donahey (ISB #9963)
Christopher C. McCurdy (ISB #8552)
HOLLAND & HART LLP
800 W. Main Street, Suite 1750
Boise, ID 83702-7714
Telephone:  208.342.5000
TIDonahey@hollandhart.com
CCMcCurdy@hollandhart.com

Jill L. Rosenberg (admitted *pro hac vice*)
Daniel A. Rubens (admitted *pro hac vice*)
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 W. 52nd Street
New York, NY 10019-6142
Telephone:  212.506.5000
jrosenberg@orrick.com
drubens@orrick.com

*Attorneys for Petitioner UBS Financial Services, Inc.*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| UBS FINANCIAL SERVICES, INC.,<br><br>    Petitioner.<br><br>vs.<br><br>RANDY S. ANDERSON,<br><br>    Respondent. | Case No. 1:25-cv-00353<br><br>**REPLY IN SUPPORT OF MOTION TO VACATE ARBITRATION AWARD [DKT. 1]** |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................................................... ii
INTRODUCTION .......................................................................................................................... 1
ARGUMENT .................................................................................................................................. 2
    I.    The FAA Authorizes Vacatur Of Arbitration Awards That Are Completely Irrational Or Manifestly Disregard The Law. ..................................... 2
    II.    Anderson's Attempts To Rewrite The Award Cannot Save It From Vacatur. ............................................................................................................................. 4
    III.    The Majority's Award Manifestly Disregarded The ADEA. ................................ 7
CONCLUSION .............................................................................................................................. 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Postal Workers Union AFL-CIO v. U.S. Postal Serv.*,
    682 F.2d 1280 (9th Cir. 1982) ...................................................................................2

*Aspic Eng'g & Constr. Co. v. ECC Centcom Constructors LLC*,
    913 F.3d 1162 (9th Cir. 2019) ...................................................................................1

*Bosack v. Soward*,
    586 F.3d 1096 (9th Cir. 2009) ...................................................................................2

*Comedy Club, Inc. v. Improv W. Assocs.*,
    553 F.3d 1277 (9th Cir. 2009) ...................................................................................2

*Coutee v. Barington Capital Group, L.P.*,
    336 F.3d 1128 (9th Cir. 2003) ...................................................................................3

*Day v. Sears Holdings Corp.*,
    930 F. Supp. 2d 1146 (C.D. Cal. 2013) ....................................................................9

*Decker v. Barrick Goldstrike Mines, Inc.*,
    645 F. Appx. 565 (9th Cir. 2016)............................................................................8, 9

*Foruria v. DirecTV Customer Servs., Inc.*,
    No. 05-262-S-BLW, 2005 WL 8165146 (D. Idaho Dec. 15, 2005) ..........................3

*Freightliner, LLC v. Teamsters Loc. 305*,
    336 F. Supp. 2d 1118 (D. Or. 2004) .........................................................................3

*Hardy v. Walsh Manning Sec., L.L.C.*,
    341 F.3d 126 (2d Cir. 2003)...................................................................................6, 7

*O'Connor v. Cymer, LLC*,
    No. 1:16-cv-00532-DCN, 2020 WL 1066974 (D. Idaho Mar. 5, 2020)................8, 9

*Pac. Motor Trucking Co. v. Auto. Machinists Union*,
    702 F.2d 176 (9th Cir. 1983) .....................................................................................3

*Rose v. Wells Fargo & Co.*,
    902 F.2d 1417 (9th Cir. 1990) ...................................................................................9

*Sheppard v. David Evans & Assoc.*,
    694 F.3d 1045 (9th Cir. 2012) ...................................................................................8

*Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.*,
　559 U.S. 662 (2010) ................................................................................................10

*Unite Here v. Wilton Rancheira*,
　No. 2:23-cv-02767-KJM-SCR, 2024 WL 5047033 (E.D. Cal. Dec. 9, 2024) ..........2

*United States v. Williams*,
　No. CV05-23-S-EJL, 2005 WL 1847179 (D. Idaho Aug. 3, 2005) .........................5

*Wallace v. Buttar*,
　378 F.3d 182 (2d Cir. 2004) .....................................................................................7

*Zeidman v. Lindell Mgmt. LLC*,
　No. 24-1608, -- F.4th --, 2025 WL 2056153 (8th Cir. July 23, 2025) .....................3

**Statutes**

9 U.S.C. § 10(a) ..............................................................................................................2

29 U.S.C. § 623(a) ........................................................................................................10

**Other Authorities**

Charles Alan Wright & Arthur R. Miller, 5 Federal Practice and Procedure Civil,
　Pleading a Claim for Relief, §§ 1215-54 (4th ed. 2025) ..........................................5

FINRA Dispute Resolution Expungement (Sept. 2014), https://perma.cc/G6KM-
　3WD8 .......................................................................................................................6

## INTRODUCTION

No one disputes that federal courts vacate arbitration awards only on rare occasions. But the Award here is unsustainable even under the FAA's demanding standards. Anderson's opposition fails to change that reality. The bulk of his submission consists of reciting legal standards that UBS does not contest. To the limited extent Anderson engages with UBS's contentions and the record of this case, Anderson attempts to rewrite the Award, arguing that the panel majority *could have* awarded compensatory damages on some unarticulated basis. But that is not what the panel majority did; it chose instead to find for Anderson solely on his age discrimination claim and award him $1 million in compensatory damages, grant his request for expungement, and deny each of his other theories of liability.

The panel majority's findings are facially inconsistent and explicable only as a dispensation of the majority's "'own brand of industrial justice.'" *Aspic Eng'g & Constr. Co. v. ECC Centcom Constructors LLC*, 913 F.3d 1162, 1167 (9th Cir. 2019). While the majority may have sympathized with Anderson and felt that termination was too harsh a sanction for his offense, its award cited no evidence that UBS fired Anderson because of his age. Instead, the Award's reasoning is fundamentally at odds with its theory of liability. Such an award cannot be defended as rational or in accordance with the law. It is no answer for Anderson to emphasize his performance record prior to his unauthorized trading, as that does not alter his tactical decision to rely on a theory that UBS terminated him for reasons having nothing to do with his age. The law required Anderson to prove age discrimination in order to prevail on the sole legal theory that the majority found had merit, but neither the majority's Award nor Anderson's opposition identifies any legal or factual basis to support such a finding. The Award must be vacated.

# ARGUMENT[1]

**I. The FAA Authorizes Vacatur Of Arbitration Awards That Are Completely Irrational Or Manifestly Disregard The Law.**

Anderson is wrong to dismiss UBS's motion as "an impermissible appeal on the merits." Opp. 1. It is true that the parties here agreed to resolve their disputes through an arbitration process, during which they had opportunities to provide the panel with evidence and legal argument in support of their submissions. *See* Opp. 2-5. But that in no way immunizes the award from challenge. To the contrary, the FAA expressly provides for vacatur on specified grounds, 9 U.S.C. § 10(a), and the Ninth Circuit recognizes "manifest disregard of the law" as "a valid ground for vacatur." *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1290 (9th Cir. 2009).

Anderson cannot dispute that under this standard, courts may vacate an award when it is "'clear from the record that the arbitrator recognized the applicable law and then ignored it.'" *Id.* For all of Anderson's emphasis on cases rejecting manifest disregard challenges,[2] the fact remains that courts in this Circuit can and do vacate awards on such grounds when warranted. *Id.* at 1293-94 (vacating award where arbitrator's ruling enforcing non-compete covenant in agreement was in manifest disregard of law); *Am. Postal Workers Union AFL-CIO v. U.S. Postal Serv.*, 682 F.2d 1280, 1284-85 (9th Cir. 1982) (vacating award where arbitrator's finding that employee did not

---

[1] Citations to "Mem." refer to UBS's memorandum of points and authorities in support of the motion to vacate (ECF Doc. No. 1-3), and citations to "Ex." refer to the exhibits attached to the Declaration of Christopher McCurdy in support of that motion (ECF Doc. No. 1-4). Citations to "Opp." refer to Anderson's opposition to the motion to vacate (ECF Doc. No. 14).

[2] Anderson's citations are inapposite, as UBS is not seeking vacatur based merely on "contradictory findings of fact," a purported "inconsisten[cy]" in the award that is susceptible to an "alternate explanation," or the panel's failure to credit testimony of a key witness. Opp. 10-11 (citing *Comedy Club*, 553 F.3d at 1238, *Bosack v. Soward*, 586 F.3d 1096 (9th Cir. 2009), and *Unite Here v. Wilton Rancheria*, No. 2:23-cv-02767-KJM-SCR, 2024 WL 5047033 (E.D. Cal. Dec. 9, 2024)). Instead, UBS submits that the panel majority awarded damages based on a liability theory that Anderson disavowed and that the record cannot support. *See infra.*

**REPLY IN SUPPORT OF MOTION TO VACATE ARBITRATION AWARD – Page 2**

participate in strike "constitute[d] manifest disregard of the law"); *Pac. Motor Trucking Co. v. Auto. Machinists Union*, 702 F.2d 176, 177 (9th Cir. 1983) (vacating award because the arbitrator disregarded a contract provision in order "to correct what he perceived as an injustice"); *Freightliner, LLC v. Teamsters Loc. 305*, 336 F. Supp. 2d 1118, 1127 (D. Or. 2004) (vacating award because arbitrator's interpretation of statutory provision was "a manifest disregard of the law and irrational"); *see also, e.g.*, *Zeidman v. Lindell Mgmt. LLC*, No. 24-1608, -- F.4th --, 2025 WL 2056153, at *6 (8th Cir. July 23, 2025) (vacating arbitration award where panel violated contract law principles and instead "'imposed its own conception of sound policy'").

Further, while an arbitrator's erroneous factual findings do not always suffice to require vacatur, *see* Opp. 10, a "federal court will not confirm an arbitration award that is legally irreconcilable with the undisputed facts," *Coutee v. Barington Capital Group, L.P.*, 336 F.3d 1128, 1133 (9th Cir. 2003). Put differently, "an arbitrator's failure to recognize undisputed, legally dispositive facts may properly be deemed a manifest disregard for the law." *Id.*; *accord Foruria v. DirecTV Customer Servs., Inc.*, No. 05-262-S-BLW, 2005 WL 8165146, at *2 (D. Idaho Dec. 15, 2005). Under these authorities, Anderson has no choice but to concede that an award can be vacated when it rests on a "finding of fact [that] was completely irreconcilable with the relief granted in the award." Opp. 12 (discussing *Am. Postal Workers Union*).

That is true here. As UBS's motion explained, the majority's Award is unsupportable on its face, as it ruled in Anderson's favor solely on an age discrimination claim, yet relied on findings that he was terminated "without cause" based on other, non-discriminatory reasons. Nor does anything in the record support a finding of age discrimination: Anderson did not attempt to adduce any evidence of age discrimination or develop any argument that UBS fired him because of his age, as would be required to prove a claim under the Age Discrimination in Employment Act

**REPLY IN SUPPORT OF MOTION TO VACATE ARBITRATION AWARD – Page 3**

("ADEA"). In defending the Award, Anderson does not seriously contest the absence of proof of age discrimination. Instead, his primary response is to insist that the majority could have awarded $1 million in compensatory damages on claims other than age discrimination. But as set forth below, his arguments fly in the face of the Award itself and cannot overcome the majority's manifest disregard of the law of age discrimination.

II.     **Anderson's Attempts To Rewrite The Award Cannot Save It From Vacatur.**

Anderson argues that the Award was not irrational or entered in manifest disregard of the law because "several alternate interpretations [of the Award] exist that are rational and plausible interpretations of the evidence and claims." Opp. 13. Those "alternate interpretations" all reduce to the theory that the majority awarded damages on claims *other than* age discrimination under the ADEA—including wrongful termination, equity, defamation, or some combination of those theories. *See id*. at 16-17. But these purported interpretations do not supply a "plausible basis for the award" or otherwise present a mere "ambiguity" in the decisional process. *Id.* at 11, 15.

Far from supporting Anderson's gloss on the Award, the majority's "own words" (Opp. 14) foreclose it. In the "Case Summary" section of the Award, the majority summarized Anderson's "causes of action," describing his theory of "discrimination based on age in violation of the [ADEA]," and in the following sentence, noting his distinct "claim" alleging that the Form U5 filed by UBS was "defamatory in nature." Award 1-2. In a separate section, the Award describes the "Relief Requested," including compensatory damages and Form U5 expungement. *Id.* at 2. Then, in its "Findings," the majority determined, *inter alia*, that Anderson raised "serious questions" about Anderson's termination process, declared that the termination was "wrongful," and stated that the Form U-5 description of his termination was "unfair." *Id.* at 2-3. Finally, in the section entitled "Award," the majority: (1) "granted" Anderson's ADEA claim, finding that he was

"above 60 years and the termination was disproportionately severe," (2) found UBS liable for $1 million in compensatory damages, (3) recommended expungement of Anderson's Form U5 and new explanatory language; and (4) provided that "*[a]ny and all claims for relief not specifically addressed herein . . . are denied*." *Id.* at 3-4 (emphasis added).

Anderson all but ignores the majority's statement that it was denying *any and all* claims not "specifically addressed herein." In a single sentence, he suggests that the majority meant to distinguish "claims for relief," on the one hand, from "causes of action" or "theories of liability," on the other, and thus intended only to clarify that no additional "forms of relief (i.e. punitive damages, treble damages, and attorneys' fees)" were to be awarded. Opp. 8. That interpretation is untenable, given that the Award interchangeably used the terms "claims" and "causes of action" to refer to Anderson's theories of liability. *See* Award 1. Thus, in "grant[ing]" Anderson just one of his "claims" (the "claim[]" for age discrimination), awarding relief in the form of compensatory damages and expungement, and then "deny[ing]" "any and all claims for relief not specifically addressed"—the panel necessarily dismissed all other theories of liability and requests for relief not expressly mentioned. *Id.* at 3-4. After all, the term "claim for relief" is a legal term of art with a settled meaning—namely, the legal and factual basis for a party's claim to entitlement to relief.[3] And even if the Award had intended "claims for relief" to have some unusual meaning, it still would not follow that the majority tied its damages award to an unspecified legal theory on which

---

[3] *See, e.g.*, *United States v. Williams*, No. CV05-23-S-EJL, 2005 WL 1847179, at *3-4 (D. Idaho Aug. 3, 2005) (ordering that petitioner's "second claim for relief is denied," and using that phrase interchangeably with "ground for relief" or "claim"); *see also generally* Charles Alan Wright & Arthur R. Miller, 5 Federal Practice and Procedure, Pleading a Claim for Relief, §§ 1215-54 (4th ed. 2025) (describing pleading requirements to establish the grounds upon which a plaintiff claims an entitlement to relief).

**REPLY IN SUPPORT OF MOTION TO VACATE ARBITRATION AWARD – Page 5**

it silently found UBS liable, rather than the sole theory on which it *expressly* made a liability finding.

For similar reasons, Anderson is wrong to characterize the majority's compensatory damages award as untethered to any one cause of action, and in particular, to suggest that the damages could have been granted "due to the consequences of UBS's inaccurate Form U5 disclosure—the same disclosure that the Majority chose to expunge." Opp. 16. Again, that reading is at war with the Award's plain terms. The majority's damages award immediately follows its finding that Anderson had proven his age discrimination claim, which is the only plausible harm the majority could have been compensating with damages.

Contrary to Anderson's telling, the majority *did not* conclude that Anderson "prevailed on two specific claims." Opp. 7. Although the majority recommended expungement after determining that the Form U5 description of Anderson's termination was "unfair," Award 3-4, it never found that the Form U5 language was defamatory.[4] It makes no sense to suggest that the compensatory damages were somehow linked to Anderson's "claim for expungement," Opp. 7, when expungement is a form of relief (and the majority categorized it as such, *see* Award 2), not a legal wrong that can be remedied with money damages. Especially when the majority recommended expungement only *after* granting the age discrimination claims and awarding damages.

---

[4] FINRA has instructed arbitrators that it will expunge Form U5 information without a court order if arbitrators "determine that the information is defamatory in nature" and "clearly state in the award that they are recommending expungement based on the defamatory nature of the information." *See* FINRA Dispute Resolution Expungement at 22 (Sept. 2014), https://perma.cc/G6KM-3WD8. Here, the panel did not make such a determination or include such a statement, but instead informed Anderson that he "must obtain confirmation of th[e] Award from a court of competent jurisdiction" before the recommended expungement could be processed. Award 4. That refutes Anderson's speculation that the majority may have based the damages award on an unstated finding that the Form U5 description was defamatory. *See* Opp. 5.

**REPLY IN SUPPORT OF MOTION TO VACATE ARBITRATION AWARD – Page 6**

Although Anderson tries to change the subject to whether the panel *could have* based its damages award on alternative theories, it is not the role of a reviewing court to "supply an alternate theory of liability where the Panel has already supplied one." *Hardy v. Walsh Manning Sec., L.L.C.*, 341 F.3d 126, 132 (2d Cir. 2003). Instead, when an award "contain[s] an explicit legal conclusion," *id.* at 133, it must stand or fall on those terms.[5] That the majority might have written a different award less vulnerable to vacatur is beside the point where the majority's stated findings are irrational and manifestly disregard the law.

### III. The Majority's Award Manifestly Disregarded The ADEA.

In resisting UBS's contentions of manifest disregard, Anderson again accuses UBS of relying on "assumptions" about the Award by looking behind the arbitrators' stated reasons. Opp. 17. But Anderson misunderstands UBS's argument, which invites this Court to consider the arbitration record only in the alternative, as its irrationality is evident from the "face of the Award." Mem. 12. UBS has relied first and foremost on the language of the arbitration decision, which as explained, requires vacatur on its own terms. Consideration of the arbitration record only confirms the majority's fundamental disregard of controlling law.[6]

---

[5] In *Hardy*, the Second Circuit concluded that an arbitration award was unambiguous because the panel issued a decision specifying a theory of liability and remained silent as to other theories of liability. 341 F.3d at 132. Here, the panel went a step further and disclaimed reliance on other legal claims by expressly denying all other theories of liability.

[6] For similar reasons, Anderson is wrong to criticize UBS for failing to supply the "full underlying record" on its motion. Opp. 1 & n.1. Submission of the complete record is not required for vacatur. *See Wallace v. Buttar*, 378 F.3d 182, 193 (2d Cir. 2004) ("To the extent that a federal court may look upon the evidentiary record of an arbitration proceeding at all, it may do so *only* for the purpose of discerning whether a colorable basis exists for the panel's award so as to assure that the award cannot be said to be the result of the panel's manifest disregard of the law."). In any event, the record here only confirms the lack of any evidence supporting Anderson's ADEA claim. If any aspect of the record supported an age discrimination claim, Anderson no doubt would have cited it in his opposition.

**REPLY IN SUPPORT OF MOTION TO VACATE ARBITRATION AWARD – Page 7**

UBS's manifest-disregard argument is simple: the majority cannot permissibly grant an age discrimination claim absent some showing that UBS fired Anderson because of his age. There can be no dispute that UBS presented the arbitration panel with the applicable law, including by describing the ADEA's burden-shifting framework in its Statement of Answer. Under that framework, as UBS explained, the employee must not only make a "prima facie case of age discrimination," but then, when an employer articulates a "legitimate, nondiscriminatory reason for its adverse employment action," the employee must prove that the employer's reason "constitutes mere pretext for unlawful discrimination." Ex. 6 at 11 (quoting *Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1049 (9th Cir. 2012)).[7]

In finding that UBS discriminated against Anderson, the majority manifestly disregarded this controlling law. Anderson's opposition focuses on the initial step of the *McDonnell Douglas* framework, contending that his "clean performance record" prior to the unauthorized trading was enough to establish a prima facie case. Opp. 18. But Anderson's own authorities recognize that a prima facie case requires more, including a showing that the plaintiff was treated "less favorably than similarly situated … employees" who are not members of the protected class. *Decker v. Barrick Goldstrike Mines, Inc.*, 645 F. Appx. 565, 567 (9th Cir. 2016); *see also* Ex. 6 at 11-12 (Statement of Answer) (prima facie case under the ADEA requires showing that the plaintiff was "either replaced by a substantially younger employee with equal or inferior qualifications or discharged under circumstances otherwise giving rise to an inference of age discrimination"); *O'Connor v. Cymer, LLC*, No. 1:16-cv-00532-DCN, 2020 WL 1066974, at *4 (D. Idaho Mar. 5, 2020) (same). Here, as discussed, Anderson provided no direct evidence that UBS acted out of age-

---

[7] In his closing, UBS's counsel again referred to Anderson's purported "age claim," arguing that it must be dismissed because Anderson had offered "no evidence" to support it. Ex. 21 at 34; *see also id.* at 43.

related animus. While he insisted that other employees who had engaged in similar misconduct were disciplined less severely, he made no effort to identify younger comparators who could support a prima facie case under the ADEA. *See* Ex. 15 at 18-22. Instead, he rested his case on theories that UBS fired him for other reasons that, while allegedly unjustified, had no relationship to his age.

Even if Anderson were able to prove disparate treatment or an inference of discrimination so as to make a prima facie case, UBS offered a legitimate, non-discriminatory reason for termination—Anderson violated at least four UBS policies. Anderson has conceded that his trades were unauthorized and contrary to UBS policy, which suffices to discharge any burden UBS would have to provide a legitimate, non-discriminatory explanation. *See, e.g.*, *O'Connor*, 2020 WL 1066974, at *4 (employer's explanation that it fired an employee for insubordination and violating a Standards of Conduct Policy was a legitimate, non-discriminatory reason for termination, "[r]egardless of whether [the employee's] work history was great or not"); *Day v. Sears Holdings Corp.*, 930 F. Supp. 2d 1146, 1170 (C.D. Cal. 2013) ("violation of company policies is a legitimate, nondiscriminatory basis for terminating an employee"). Anderson thus needed to show that UBS's stated reasons were a pretext for unlawful age discrimination—consistent with his "ultimate burden of persuading the trier of fact that the defendant . . . discriminated against" him because of his age. *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1421 (9th Cir. 1990) (quotation marks omitted); *see also, e.g.*, *Decker*, 645 F. Appx. at 568 (affirming summary judgment for employer on ADEA claim where employee "failed to raise a triable issue of fact as to whether [employer's] proffered reason for terminating him was a pretext for discrimination on the basis of his age").

The fundamental problem for Anderson is that there is no evidence of age discrimination, which is why he did not argue age discrimination at the hearing, and why the majority failed to

make any findings that could support an ADEA violation. As the dissenting arbitrator put it (and as Anderson does not dispute): "The only mention of the age discrimination claim [at the hearing] occurred when [Anderson] was asked … whether he had heard any remarks from [UBS] concerning his age and he answered 'no.'" Award 8. To be sure, as Anderson notes, the panel expressed dissatisfaction with UBS's explanation for its decision to terminate him and described his termination as "wrongful." Award 3. But under the law described above, those findings are no substitute for proof, whether direct or circumstantial, that UBS fired him *because of his age*. If anything, the majority's reference to "potential financial motivations for termination," *id.*, refutes any notion that his age is what drove UBS's decision, much like Anderson's ultimate theory that UBS retaliated against him based on suspicions he would join a competitor.

Anderson's arguments thus fail to excuse the majority's manifest disregard of the ADEA, which predicates liability on proof that an employer acted "because of [the employee's] age." 29 U.S.C. § 623(a). There is no question the arbitration panel was aware of that requirement, yet it chose to ignore it. Even if the majority believed that Anderson was treated unfairly or doubted UBS's explanations for its actions, the ADEA proscribes age discrimination; it does not give arbitrators carte blanche to grant remedies for any termination they think is unjustified. The majority disregarded that law in finding UBS liable under the ADEA based on a record that undisputedly contains no evidence of age discrimination. Because "[t]he conclusion is inescapable that the panel simply imposed its own conception of sound policy," *Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 675 (2010), the Award cannot stand.

## CONCLUSION

This Court should vacate the award.

DATED: August 7, 2025

                        HOLLAND & HART LLP

                        By: */s/Christopher C. McCurdy*
                        Teague I. Donahey
                        Christopher C. McCurdy

                        Jill Rosenberg (admitted *pro hac vice*)
                        Daniel A. Rubens (admitted *pro hac vice*)
                        Orrick, Herrington & Sutcliffe LLP

                        *Attorneys for Petitioner UBS Financial Services, Inc.*

35523576_v2