UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UBS FINANCIAL SERVICES, INC., | Case No. 1:25-cv-00353-DCN |
| Petitioner, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| RANDY S. ANDERSON, | |
| Respondent. | |

## I. INTRODUCTION

Before the Court is UBS Financial Services, Inc.'s ("UBS") Petition and Motion to Vacate Arbitration Award. Dkt. 1.[1] Randy S. Anderson filed his Memorandum in Opposition (Dkt. 14) and UBS replied (Dkt. 17).

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds the decisional process would not be significantly aided by oral argument, the Court will address the motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For the reasons outlined below, UBS's Petition and Motion to Vacate

---

[1] UBS also filed a Motion to Seal certain documents because there are related to third-parties not involved in this litigation or because they contain proprietary business information. Dkt. 3. Anderson did not oppose the motion. Good cause appearing, the same is GRANTED and the documents so identified will remain under seal. *See Kamakana v. City and Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006).

Arbitration Award (Dkt. 1) is DENIED.

## II. BACKGROUND

UBS is a publicly traded multinational investment bank and financial services firm. UBS is regulated under the Security Exchange Commission through the Financial Industry Regulatory Authority ("FINRA"). Anderson was a long-time employee of UBS working as a financial advisor in Boise, Idaho, until he was terminated in November 2020. UBS states that Anderson was terminated for executing two unauthorized sell orders on a client account in January 2020. Dkt. 1, at 4.

Anderson had an employment contract with UBS that stated, among other things, that any dispute between Anderson and UBS concerning "compensation, benefits or other terms or conditions of employment and termination of employment, or any claims for discrimination , retaliation or harassment, or any claims for discrimination, retaliation or harassment, or any other claims whether they arise by statute or otherwise . . . will be determined by arbitration . . . ." Dkt. 1-11, at 5-6, ¶ 21. This arbitration provision also states "[a]ny such arbitration will be conducted under the auspices and rules of [FINRA] . . . ." *Id.*

Anderson initiated arbitration pursuant to his employment agreement and FINRA Rule 13200, bringing contract, tort, and equitable claims regarding his termination, benefits, and employment with UBS. Specifically, Anderson brought eight claims: 1. Wrongful Termination; 2. Breach of Duty of Good Faith and Fair Dealing; 3. Breach of Fiduciary Duty; 4. Breach of Contract; 5. Unfair Competition/Unjust Enrichment; 6. Age Discrimination; 7. Equity; and 8. Defamation. Dkt. 1-3, at 8. Anderson requested past and

future economic damages totaling, on the low end, $1,827,930.00, as well as unspecified amounts for emotional distress and punitive damages. Dkt. 1-5, at 3.

UBS submitted to arbitration and after the arbitration proceedings concluded, a two-thirds majority of the arbitration panel issued a decision in favor of Anderson. *See* Dkt. 1-5. The majority decision is short and contains little explanation or reasoning for why they made the award to Anderson. The decision itself is a nine-page document, the majority decision spans seven pages, and the ultimate dispute revolves around the meaning of what is written in the 'Findings' and 'Award' sections of the decision, which span about two pages. Dkt. 1-5, at 3-5. In the award section of the decision the majority states: "Respondent is liable for and shall pay to Claimant the sum of $1,000,000.00 in compensatory damages." Dkt. 1-5, at 4. The award section is also where the majority states that UBS violated the ADEA. *Id.* In the findings section, the majority states that UBS failed to timely remove Anderson's webpage from the UBS website, that UBS acted prejudicially during the arbitration process, and that UBS ran advertisements stating Anderson's team still worked for UBS after Anderson was terminated. *Id.* at 3-4.UBS now asks the Court to review and vacate the arbitration award on grounds that the arbitration award was completely irrational and showed a manifest disregard of the law based on that roughly two-page portion of the arbitration decision. *See generally* Dkt. 1-3. Anderson opposes the requested relief and asserts the Court should not disturb the arbitration panel's findings. Dkt. 14.

### III. LEGAL STANDARD

The Federal Arbitration Act ("FAA"), codified at 9 U.S.C. § 1, *et. seq.*, makes contracts to arbitrate valid, irrevocable, and enforceable so long as the subject of the

contract containing the arbitration clause involves commerce. *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008). The exclusive grounds for vacating or modifying arbitration awards are found in §§ 10 and 11 of the FAA. *Id.* at 584.

When the Court is tasked with reviewing an arbitration award for potential vacatur under § 10 of the FAA, the Court's review "is both limited and highly deferential and the arbitration award may be vacated only if it is completely irrational or constitutes manifest disregard of the law." *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1288 (9th Cir. 2009) (citation modified). "A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award." *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 598 (1960). Arbiters need not express any reasoning or explanation for their decision. *Bosack v. Soward*, 586 F.3d 1096, 1104 (9th Cir. 2009).

## IV. DISCUSSION

### A. The arbitration decision does not exhibit a manifest disregard of the law.

UBS alleges the majority showed a manifest disregard of the law when they awarded compensatory damages for the ADEA violation against Anderson. UBS argues the majority failed to apply the burden shifting framework of the ADEA, failed to use any factual basis for finding an ADEA violation, and that the ADEA violation was the only grounds upon which the majority granted Anderson compensatory damages. *See* Dkt. 1-3; Dkt. 17. Anderson argues the decision is ambiguous as to which claim compensatory damages were awarded. Dkt. 14.

"Manifest disregard of the law means something more than just an error in the law or a failure on the part of the arbitrators to understand or apply the law." *Biller v. Toyota Motor Corp.*, 668 F.3d 655, 665 (9th Cir. 2012). "To vacate an arbitration award on this ground, it must be clear from the record that the arbitrators recognized the applicable law and then ignored it." *Id.* "It is not enough for petitioners to show that the panel committed an error—or even a serious error." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010). An arbiter can only be found to have recognized and ignored the law if the arbitration award indicates so explicitly, through the arbiter's own words. *Lagstein v. Certain Underwriters at Lloyd's, London,* 607 F.3d 634, 641 (9th Cir.2010); *see also Biller*, 668 F.3d at 665. Additionally, an arbiter may show a manifest disregard of the law if the arbiter exceeds the bounds of his legal authority in issuing a decision. *Comedy Club*, 553 F.3d at 1277 (holding the arbiter impermissibly sought to bind parties to an agreement for which he did not have legal authority to do so under California law).

Generally, manifest disregard of facts is not a ground for vacation of an arbitration award. *Biller*, 668 F.3d at 669; *see also Coutee v. Barington Capital Group, L.P.*, 336 F.3d 1128, 1133—34 (9th Cir. 2003) (explaining that, only when there are undisputed facts which are legally irreconcilable with the relief granted in the arbitration award, will the court find a manifest disregard of the law).

UBS's entire argument for vacatur rests on the contention that the arbitration award of $1,000,000 in compensatory damages is linked completely to the majority's finding in favor of Anderson's age discrimination claim. *See* Dkt. 1-3; Dkt. 17. UBS contends the arbitration decision shows a manifest disregard for the law because the arbitration panel

was presented with the relevant law regarding age discrimination according to the Age Discrimination Employment Act, and ignored it. *Id.* Specifically, UBS argues the panel failed to apply the burden shifting framework for age discrimination cases, showing that they ignored the law. Dkt. 17, at 12. Additionally, UBS argues that the arbitration panel ignored the fact that Anderson presented no evidence during the arbitration hearing showing that UBS terminated him because of his age. UBS's argument that the arbitration decision shows a manifest disregard of the law fails for two reasons.

First, the arbitration decision and underlying record does not indicate that the arbiters in the majority ignored the law. At most, the arbiters committed error in the application of the law. But even assuming that was the case, such is not a ground for vacatur. That there was little to no evidence presented at the arbitration hearing which indicates UBS committed age discrimination shows, at most, that the arbiters showed a manifest disregard of the facts, not the law. None of the facts listed in the majority decision are legally irreconcilable with a finding of age discrimination. Therefore, there is no ground for vacatur based on the majority's factual findings.

The arbitration panel only wrote two sentences on the subject of age discrimination: "Claimant's statutory employment discrimination claims, pursuant to discrimination based on age in violation of the age discrimination in Employment Act, 29 U.S.C. §§ 621-634, are granted. Claimant was above 60 years and the termination was disproportionately severe." Dkt. 1-5, at 4. The arbiters cite the correct statutory scheme which allows a claim for age discrimination, and none of the facts cited in the decision are irreconcilable with

the ADEA or other law.[2] Without more explanation from the arbiters, the Court has no way of knowing what else they considered in reaching their opinion, but the arbiters are not required to explain themselves at all. *Bosack v. Soward*, 586 F.3d 1096, 1104 (9th Cir. 2009) ("An arbitrator's award may be made without explanation of their reasons and without a complete record of their proceedings. If they choose not to do so, it is all but impossible to determine whether they acted with manifest disregard for the law." (citation modified)).

Second, even if the majority did manifestly disregard the law as it pertains to their finding that UBS violated the ADEA, the decision is, nevertheless, ambiguous as to what claim the compensatory damages are related to. A legal document is ambiguous if it does not convey "a clear, explicit, and inevitable meaning in the eyes of reasonable readers[.]" *Ambiguous*, Black's Law Dictionary (12th ed. 2024). Reading the majority opinion as a whole, specifically considering the findings and award sections, it is a reasonable interpretation of the decision that the compensatory damages were awarded for reasons *other than* age discrimination. The compensatory damages may pertain to Anderson's equity, defamation, or unjust enrichment claims, although the majority did not expressly link the award to any claim.  Dkt. 1-5, at 3-5. UBS argues that because the majority stated in the award section "[a]ny and all claims for relief not specifically addressed herein, including any requests for punitive damages, treble damages, and attorneys' fees, are denied" and the only claim for relief addressed in the award section is the ADEA claim,

---

[2] If the arbiters decided that UBS violated the ADEA by firing Anderson even though he was under 60 years old, for example, that would be a manifest disregard of the law since the fact of Anderson's younger age would be legally irreconcilable with the ADEA.

the compensatory damages must be attributable to the ADEA claim. Dkt. 1-5, at 5; Dkt. 1-3, at 12; Dkt. 17, at 7. But "herein" as used in the majority opinion could reasonably mean within the award section specifically or the decision as a whole, which includes the findings section. Therefore, the majority decision is still ambiguous as to what claims the compensatory damages are based on, and because ambiguities in an arbitration decision which may imply that an arbiter exceeded their authority are not valid grounds for vacatur, there can be no finding that the arbiters showed a manifest disregard of the law.

In sum, there is no basis for which the Court can vacate the arbitration award as no manifest disregard of the law is exhibited on the face of the decision or record. Next the Court must address the other available path for vacatur—whether the arbitration award is completely irrational.

### B. The arbitration decision is not completely irrational.

UBS alleges the majority decision is completely irrational because they ignored the at-will nature of Anderson's employment contract, effectively creating their own brand of industrial justice in awarding Anderson damages for wrongful termination. UBS argues that, because the finding that the ADEA was violated should be thrown out, and the ADEA violation was the only claim for which damages were awarded, then there could be no wrongful termination. Dkt. 1-3; Dkt. 17. Anderson again argued ambiguity in the arbitration decision means that there is no way to identify what claims wrought the $1,000,000 award. Dkt. 14.

"An [arbitration] award is completely irrational only where the arbitration decision fails to draw its essence from the agreement. An arbitration award draws its essence from

the agreement if the award is derived from the agreement, viewed in light of the agreement's language and context, as well as other indications of the parties' intentions." *Biller*, 668 F.3d at 665 (citation modified).

Here there is no misinterpretation of the underlying contract which led to the arbitration. The arbitration clause is clear that Anderson was allowed to bring a broad range of claims related to his employment, benefits, retaliation, etc., so long as the forum was a FINRA arbitration. Dkt. 1-11, at 5-6, ¶ 21. This provision gave the arbitration panel the authority to issue an award based on claims not relevant to the employment contract itself.

Neither party argues the arbitration clause was incorrectly interpreted by the arbitration panel. *See generally* Dkt. 1-3; Dkt. 14; Dkt. 17. Pursuant to the arbitration provision of his employment contract, Anderson brought eight claims: 1. Wrongful Termination; 2. Breach of Duty of Good Faith and Fair Dealing; 3. Breach of Fiduciary Duty; 4. Breach of Contract; 5. Unfair Competition/Unjust Enrichment; 6. Age Discrimination; 7. Equity; and 8. Defamation. Dkt. 1-3, at 8. Only three of these claims require interpretation of the employment contract beyond the arbitration clause—breach of contract, wrongful termination, and breach of duty of good faith and fair dealing. *See Hummer v. Evans*, 923 P.2d 981, 987 (Idaho 1996) (stating that the latter two causes of action are contract claims rather than tort claims as pertaining to at-will employment contracts).

UBS argues that because Anderson was an at-will employee and he was fired for his unauthorized trades, not an otherwise illegal reason, the majority impermissibly dispensed their own brand of industrial justice. While the majority decision does state that Anderson

MEMORANDUM DECISION AND ORDER - 9

was terminated wrongfully, the decision was ambiguous as to whether that finding directly correlated to the compensatory damages awarded. Regardless, UBS's argument assumes the majority's decision—that UBS violated the ADEA—was in manifest disregard of the law. But, as explained above, this argument is rejected by the Court. Therefore, the at-will employment provision of the employment contract does not prevent a finding of wrongful termination so long as there is a reason based in statute why termination would be wrongful. The majority decision cannot be said to have ignored the essence of the employment contract here the arbitration clause was correctly interpreted, and the at-will employment provision of the contract was honored by the majority.

Because the majority decision draws from the essence of the underlying agreement and because ambiguities in an arbitration decision which may imply that an arbiter exceeded their authority are not valid grounds for vacatur, there can be no finding that the arbiters in the majority dispensed their own brand of industrial justice. In other words, the majority decision is not *completely* irrational.

## V. CONCLUSION

The Court has a very short leash when it comes to reviewing an arbitration award for vacatur under § 10 of the FAA. Even when arbitration awards contain ambiguities, little to no explanation, serious errors in the law and application of the law, or complete disregard for the facts, the Court may only vacate the award if the Petition shows the arbitration decision was the result of a manifest disregard of the law or was completely irrational.

These two options for vacation are narrow and highly specific. Being bound by the parameters of § 10 of the FAA and corresponding case law, the Court cannot say that the

arbitration decision in this case shows a manifest disregard for the law or that the decision is completely irrational. Therefore, the arbitration award in favor of Anderson will stand.

## VI. ORDER

1. UBS's Petition and Motion for Vacation of Arbitration Award (Dkt. 1) is DENIED.

2. UBS's Motion to Seal (Dkt. 3) is GRANTED.

3. This case is CLOSED.

DATED: March 13, 2026

_____

David C. Nye
U.S. District Court Judge